# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANGIERS INVESTORS, L.P., a Delaware Limited Partnership,<br><br>                                   Plaintiff,<br><br>           v.<br><br>MYECHECK, INC., a Nevada Corporation; EDWARD R. STARRS, an individual; and DOES 1 through 10, inclusive,<br><br>                                   Defendants. | Civil No.   10-CV-816 (BGS)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SETTLEMENT ENFORCEMENT** |

On February 24, 2011, Plaintiff Tangiers Investors, L.P. ("Tangiers") filed a motion for an order enforcing settlement agreement and stock pledge agreement against Defendant Edward R. Starrs. (Doc. No. 27.) A hearing on the matter was set for March 25, 2011. Defendant Starrs did not file a response in opposition. Pursuant to its authority under Civ. L.R. 7.1(d)(1), the Court submitted Plaintiff's motion on the papers and vacated the hearing on March 21, 2011. (Doc. No. 28.)

For the reasons set forth below, the Court grants Plaintiff's motion for an order enforcing settlement agreement and stock pledge agreement.

## I. Background

On November 8, 2010, Plaintiff and Defendants Starrs and Myecheck, Inc. ("MYEC") settled this case at an Early Neutral Evaluation Conference before Magistrate Judge Skomal. (Doc. No. 18.) The parties signed a formal settlement agreement on November 8, 2010 and a stock pledge agreement on

November 9, 2010.[1] The settlement agreement required Defendants to pay Tangiers $46,857.50, with the first payment of $7,809.60 due no later than December 8, 2010. The settlement agreement provides that Starrs and MYEC are jointly and severally liable for the payment of the entire $46,857.50.

The settlement agreement also included a stock pledge agreement as a security for the payment of the $46,857.50. Under the stock pledge agreement, Starrs and MYEC pledged and delivered to Tangiers 7,692,308 shares of MyECheck, Inc. stock as collateral security for the obligation to make the required payments to Tangiers. Under the settlement agreement, the stock certificate for the pledged shares was to be delivered to Tangiers within two business days of the execution of the settlement agreement. The settlement agreement provides that if any of the payments due under the agreement are not timely received by Tangiers, Tangiers or its counsel shall give notice to Defendants by email to Starrs and counsel for Defendants. If payment of the delinquent payment is not received within five business days from the date of receipt of the notice, Tangiers may exercise its rights under the stock pledge agreement. Under the stock pledge agreement, if Defendants default in making payments, Tangiers may foreclose on the pledged shares. The stock pledge agreement also provides that the pledgors understand that on foreclosure the pledged shares may be sold at public auction or public sale.

Plaintiff's counsel, John Torbett, avers that Defendants failed to make the first payment by December 8, 2010. (Doc. No. 27-1, Torbett Decl. ¶3.) On December 10, 2010, Mr. Torbett gave written notice of the delinquency to Starrs and counsel for Defendants, Mark Kessenbrock, via email. (*Id.* ¶5; Doc. No. 27-2 Ex. 2.) Mr. Torbett declares that five business days passed and Defendants failed to cure the delinquency. (Doc. No. 27-1, Torbett Decl. ¶6.) Following Defendants' failure to pay, Mr. Torbett attempted to foreclose on the stock pursuant to the stock pledge agreement. (*Id.* ¶7.) In response, Starrs contacted MYEC's transfer agent in an attempt to issue new shares of stock to satisfy Plaintiff's demand. (*Id.* ¶8.) Mr. Torbett emailed MYEC's transfer agent, explaining Plaintiff's position that newly issued shares would not satisfy the stock pledge agreement provision providing that on foreclosure the pledged shares may be sold at public auction or public sale because the shares could not be sold for twelve months from the date of issue pursuant to SEC Rule 144. (*Id.* ¶9; Doc. No. 27-2, Ex. 3.) Mr. Torbett then

---

[1] The settlement agreement and stock pledge agreement were lodged with the Court following their execution.

demanded that Starrs tender 7,692,308 shares of MYEC common stock from his personal holdings with an endorsed share certificate. (Doc. No. 27-1, Torbett Decl. ¶12; Doc. No. 27-2 Ex. 5.) Plaintiff has not received any shares of MYEC stock from Defendants. (Doc. No. 27-1, Torbett Decl. ¶14.)

Plaintiff now moves for an order enforcing the stock pledge agreement, compelling Defendant Starrs to immediately tender to Plaintiff 7,692,308 shares of his personal holdings of MYEC common stock that he has held longer than one year, and reimbursing Plaintiff for costs and fees incurred in connection with the attempt to enforce the agreement in the amount of $1,875. (Doc. No. 27.)

## II. Discussion

Because of "the high judicial favor accorded the voluntary settlement of disputes," a "trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it."[2] *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir.1994) (quotations omitted). To be enforced, a settlement agreement must meet two requirements. First, it must be a "complete agreement." *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir.1994). Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir.1977). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987) (citations omitted).

The Court finds that Plaintiff and Defendants entered into a complete settlement agreement and both Plaintiff and Defendants agreed to the terms, as evidenced by their signatures. Defendants, however, have not complied with the terms of the agreement as they have failed to make the required payments and have not tendered the pledged stock so that Plaintiff may foreclose on the shares. The agreement provides that Defendant Starrs is liable jointly and severally for the payment of the entire $46,857.50. The existence of the agreement and the material terms of the agreement are not in dispute, as the terms are included within the written and signed agreements. Therefore, there is no need for an evidentiary hearing on whether an

---

[2] Following the settlement of this case, the parties filed a notice of consent to the jurisdiction of the undersigned Magistrate Judge to conduct all proceedings related to the enforcement of the settlement agreement entered into by the parties to this action. (Doc. No. 24.) United States District Judge Jeffrey T. Miller then referred this case to the undersigned to conduct all proceedings related to the enforcement of the settlement agreement and any post-settlement proceedings. (Doc. No. 26.)

1  agreement existed, or what its terms were.[3]  *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1139 (9th Cir.
2  2002).  As Plaintiff describes, the only issue of contention is whether the shares tendered under the stock
3  pledge agreement must be unrestricted.

4        "The construction and enforcement of settlement agreements are governed by principles of local law
5  which apply to interpretation of contracts generally." *United Commercial Ins. Serv., Inc. v. Paymaster*
6  *Corp.*, 962 F.2d 853, 856 (9th Cir.1992) (quotation omitted).  The parties' settlement agreement that the
7  agreement shall be governed by and construed in accordance with the laws of the State of California.
8  "Under California law, the intent of the parties determines the meaning of the contract.  The relevant intent
9  is 'objective'-that is, the intent manifested in the agreement and by surrounding conduct-rather than the
10 subjective beliefs of the parties. For this reason, the true intent of a party is irrelevant if it is unexpressed."
11 *Id.* (citations omitted).  "Any contract must be construed as a whole, with the various individual provisions
12 interpreted together so as to give effect to all, if reasonably possible or practicable. Courts must interpret
13 contractual language in a manner which gives force and effect to every provision, and not in a way which
14 renders some clauses nugatory, inoperative or meaningless." *City of Atascadero v. Merill Lynch, Pierce,*
15 *Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 473 (1998) (citations omitted).

16       Paragraph 7 of the stock pledge agreement provides that the "Pledgors understand that on foreclosure
17 the pledged shares may be sold at public auction or public sale."  The stock pledge agreement was executed
18 in order to provide collateral security for the obligation of Defendants to pay $46,857.50, which was to be
19 paid over a six month period in five equal installments of $7,809.58.  The objective intent of the parties
20 manifested by the settlement agreement and the stock pledge agreement is that if Defendants defaulted in
21 making the payments, Plaintiff could foreclose upon the pledged stock shares and be able to sell the shares
22 at public auction or public sale.  Newly issued shares of MYEC stock cannot be sold for a period of twelve
23 months from the date of issuance.  *See* SEC Rule 144; (Doc. No. 27-1, Torbett Decl. ¶8; Doc. No. 27-2, Ex.
24 4).  Therefore, providing Plaintiff with newly issued or restricted shares is contrary to the intent of the
25 contract in that the stock was to be security for the money that was to be paid within six months or fully due

---

27     [3]The Court also notes that neither party has requested an evidentiary hearing nor requested to proffer additional evidence.  *See Calcor Space Facility v. McDonnell Douglas Corp.*, 5 Fed.Appx. 787, 789 (9 th Cir. 2001) (holding district court did not err in enforcing settlement agreement without holding
28 an evidentiary hearing because neither party requested a hearing nor requested to proffer additional evidence).  Defendants did not even file an opposition to Plaintiff's motion to enforce settlement.

upon default. Providing Plaintiff with restricted shares would render the stock pledge's provision that Plaintiff may sell the shares upon foreclosure meaningless.

Further supporting this intent that the pledged shares be freely trading and not be newly issued, the settlement agreement provides for Defendants to pledge and deliver to Plaintiff the stock certificate for the pledged shares of MYEC stock within two business days of the date of execution of the settlement agreement, which was November 8, 2010. Therefore, Defendants were to have delivered the stock certificate for the shares prior to any default in order for Plaintiff to foreclose upon the shares and sell them to recoup its money upon any default. Apparently, Defendants never executed the delivery of the stock certificate for the shares. Newly issued and restricted shares delivered post-default are contrary to the contract's terms of delivery two business days after execution of the agreement. The intent for the shares not to be newly issued upon default is also apparent from the stock pledge agreement, which provides that the Pledgors (Defendants) shall have full rights to vote the shares during the term of the pledge agreement, that Pledgors represent and warrant the they have good title to the pledged shares, that the pledged shares are free from liens and encumbrances, that Pledgors have full authority to transfer the shares as collateral security, and that upon completion of the payments under the settlement agreement Plaintiff shall return the shares delivered as collateral security to the Pledgors.

Construing the agreements together and as a whole, the Court finds the mutual intent of the parties was for Defendants to provide Plaintiff with a stock certificate for 7,692,308 shares as collateral security for the obligation to pay and if Defendants defaulted, Plaintiff could foreclose on the pledged shares and sell the shares at public auction or public sale to cover the amount owing. Accordingly, the Court grants Plaintiff's motion to enforce settlement agreement by compelling Starrs to provide shares of MYEC stock that are freely trading and unrestricted at the time of transfer. Additionally, the settlement agreement provides that in the event of any litigation by which one party seeks to enforce its rights under the settlement agreement, the prevailing party shall be awarded its attorneys' fees, court costs, and expenses incurred with respect to such legal efforts. Therefore, the Court grants Plaintiff's request for payment of $1,875 in

attorneys' fees and costs incurred in litigating this motion.[4]

### III. Conclusion

The Court, for the reasons set forth above, GRANTS Plaintiff's motion to enforce settlement. No later than fourteen (14) days from the date of this Order, Defendant Edward R. Starrs shall tender to Plaintiff 7,692,308 shares of freely trading MYEC stock, pay Plaintiff $1,875 in attorneys' fees and costs, and file a notice with the Court certifying compliance with this Order. Defendant's counsel, Mark Kassenbrock, is directed to serve a copy of this order on Edward R. Starrs.

**IT IS SO ORDERED**.

DATED: September 13, 2011

**BERNARD G. SKOMAL**
United States Magistrate Judge

---

[4] Plaintiff's counsel submitted in his declaration that he expended 7.5 hours at $250 per hour researching SEC Rule 144, drafting demands for compliance with the agreements, communicating with MYEC's transfer agent, and preparing the motion to enforce settlement and declaration. (Doc. No. 27-1, Torbett Decl. ¶15.) Defendants did not submit an opposition arguing these fees are unreasonable or unrecoverable under the agreement. The Court finds that Plaintiff's request for attorneys' fees in the amount of $1,875 for 7.5 hours of work at $250 per hour is reasonable.